BJARNE PEDERSON, Appellant, v. FIRST NATIONAL BANK OF NEVADA, a National Banking Association; ORME KILBURN; and DIXIE KILBURN, Respondents.

No. 8785

July 7, 1977                                      566 P.2d 89

*Gary A. Sheerin,* Carson City, for Appellant.

*Raymond B. Little,* Reno, for Respondent First National Bank of Nevada.

*Woodburn, Wedge, Blakey, Folsom and Hug,* Reno, for Respondents Orme Kilburn and Dixie Kilburn.

## OPINION

By the Court, MANOUKIAN, J.:

A complaint was filed by Respondent, First National Bank of Nevada, against co-respondents Orme and Dixie Kilburn, and Bjarne Pederson, Appellant, for collection of a $10,588.52 balance remaining on a promissory note. Kilburns, defendants below, as endorsers of the note, cross-complained against Pederson, contending that he had agreed to indemnify them as to the unpaid balance. Pederson defended against both claims urging as his "Fourth Affirmative Defense" that a full compromise and settlement had been effected which precluded the liability of either the Kilburns or himself. Following trial, the trial court entered judgment against Kilburns for the balance, and judgment was concurrently entered against Pederson incidental to the Kilburns' cross-complaint, holding him liable to them as an indemnitor. Appellant Pederson appeals solely from the lower court's determination on the "Fourth Affirmative Defense" issue of compromise and settlement.

Although he did dispute the obligation below Pederson is not here challenging his liability as an indemnitor, claiming that an effective compromise and settlement would extinguish the original debt and any incidental indemnity liability.

In 1971, Savini Construction Company, a Nevada corporation, was engaged in several construction projects in Nevada. One of such projects, known as the North Fork job, necessitated a $50,000 loan from Respondent, First National Bank, to Savini for its completion because of that corporation's then unstable financial condition. This condition prompted the Bank to require additional security for the loan in the form of the endorsement of Orme and Dixie Kilburn on the note as guarantors.

Other of the Savini jobs required the execution of performance bonds. These bonds had been co-endorsed by Bjarne Pederson because of Savini's questionable financial status. After it became clear that Savini was encountering difficulty in completing its projects, the surety company, United States Fidelity and Guaranty Company, threatened to assume control of the projects, leaving Pederson liable on the bonds. Then on September 14, 1971, lengthy negotiations between the Bank, the surety company, and Pederson were conducted, directed toward allowing Pederson to complete the construction projects in order to decrease his ultimate liability on not only the performance bonds but additionally, various other notes to the Bank which he had guaranteed for Savini. On September 15, 1971, incidental to those negotiations, an agreement was executed between the Bank and the surety company, the same consented to by Pederson and Savini. Under the agreement, Pederson undertook to finish the projects, the Bank would provide additional financial support, and the surety, in consideration thereof, was to defer the assertion of its rights as a surety, all with the purpose of minimizing any financial damage to each party.

During this time, the Bank had outstanding various loans to Savini in the aggregate sum of $203,422.57, $50,000 of which represented the note guaranteed by the Kilburns. The original agreement for the repayment of the Kilburn-guaranteed note had provided that a proportionate percentage (19 percent) of the total contract amount would be diverted from the contract payments as they were channeled through the Bank to Savini. Several of the notes had similar provisions. Rather than those diversions for repayment of the notes, the new September 15, 1971, agreement allowed the return of all contract funds by way of a trust fund to the projects themselves as a means of providing cash flow and working capital.

The signing of the new agreement meant that the Kilburns would have to consent to the new arrangement and its release as working capital of the nineteen percent of the North Fork funds designated to repay their guaranteed note. The Kilburns then attended a meeting at the Bank where the situation was explained to them. As an added incentive, there was testimony offered, and although disputed, the trial court so found that Mr. Pederson had agreed to indemnify the Kilburns as to any amount remaining on the North Fork note should it not be completely retired.

The new arrangement proved satisfactory in enabling the

completion of the various projects with the result that Pederson ultimately incurred no liability on the performance bonds, and the Bank was completely repaid for the funds loaned, with the exception of the $10,588.52, the subject of this action and appeal.

On July 30, 1973, Appellant's attorney, by letter, informed First National Bank that pursuant to the original agreement, superseded by the September 15, 1971, agreement, the repayment of the Kilburn note was complete through the application thereon of the nineteen percent North Fork contract funds. However, the total contract figure was not met, and, as a result, application of the nineteen percent left a remaining balance of $10,588.52.

Subsequently, Pederson's accountant directed "final" payment under the September 15 agreement to the Bank, accompanied by a letter. The following is relied upon by the Appellant as the the operative language for his claim of compromise and settlement. "Enclosed is our Trust Account Check No. 493 in the amount of $74,306.32 *in full settlement of the Savini-Pederson matter*." [Emphasis added.] Specific reference was made to the "Kilburn Note" diversions.

Appellant asserts that the trial court erred in not making specific findings of fact and conclusions of law that the Appellant had reached an accord and satisfaction of the Savini-Pederson matters with the Bank. Based on these facts, we cannot agree, for where the evidence is substantial and the record clear, as we find it to be in this case, and will support a judgment against a defendant, negative findings as to affirmative defenses can necessarily be implied. Hardy v. First National Bank of Nev., 86 Nev. 921, 478 P.2d 581 (1970); *accord,* Pease v. Taylor, 86 Nev. 195, 467 P.2d 109 (1970); *cf.* Gordon v. Lynch, 77 Nev. 344, 364 P.2d 889 (1961) (finding for defendant implied a finding that defense raised was persuasive); Timney v. Timney, 76 Nev. 230, 351 P.2d 611 (1960) (award of custody to father is an implied finding that he was a fit and proper person). Added to this record, a finding by the lower court that the disputed amount was still owed notwithstanding Appellant's interjection of the compromise defense most assuredly indicates that it was rejected as ineffective and allows the necessary implication thereof.

The question truly presented is whether the payment of November 21, 1973, was effectively communicated as an offer of compromise in full and final settlement of the Kilburn note

so as to produce an acceptance and meeting of the minds when credited by Respondent Bank. It is Pederson's contention that although $203,422.57 was the figure originally owed to the Bank, as embodied in the September 15, 1971, agreement, the November 21, 1973, payment in "full settlement" effected a valid compromise and settlement precluding any further liability thereupon.

The principles of accord and satisfaction, subtending those of compromise and settlement dealing only with the disputed or unliquidated amounts, are contractual in nature. This Court has stated, "[i]n order to support a plea of accord and satisfaction, it must clearly appear from the evidence that there was in fact and in reality a meeting of the minds in accord and satisfaction." Wolf v. Humboldt Co., 36 Nev. 26, at 31, 131 P. 964, 965 (1913); *accord,* Mountain Shadows of Incline v. Kopsho, 92 Nev. 599, 555 P.2d 841 (1976); Adelman v. Arthur, 83 Nev. 436, 433 P.2d 841 (1967); Walden v. Backus, 81 Nev. 634, 408 P.2d 172 (1965); Western Nat. Ins. Co. v. Trent, 69 Nev. 239, 247 P.2d 208 (1952). The court further stated:

> Unless the party has accepted the amount allowed on his claim, under such circumstances as that a settlement or compromise of matters in dispute between the parties can be inferred therefrom he is not precluded thereby from maintaining an action for the portion disallowed . . . [I]f with full knowledge . . . the claimant should, without objection, accept the amount allowed, this should be regarded as an acceptance by him of the terms of compromise offered, and he ought to be precluded from instituting an action. (36 Nev. at 31, 131 P.2d at 965)

Under Mountain Shadows of Incline v. Kopsho, 92 Nev. 599, 555 P.2d 841 (1976); and Wolf v. Humboldt Co., 36 Nev. 26, 131 P. 964 (1913), it is clear that one who asserts the defense of compromise and settlement must bear the burden of proof and clearly establish that there was a meeting of the minds of the parties. Here, the evidence does not require a finding that a compromise and settlement was effected.

It is Pederson's position that the trial court was compelled to sustain his affirmative defense since he tendered a check to the Bank for $74,306.32 in "full settlement" of the Bank's

claim against him, which check was accepted by the Bank. Although the tender of that check and acceptance by the Bank is evidence supporting his defense of compromise and settlement, other evidence presented shows that the Bank accepted the check to be credited against the full sum due it. Those countervailing factors include the following: that in negotiations several days preceding the tender of the check, the Bank had agreed to waive a portion of the past due interest as well as attorney's fees; that concurrently the Bank maintained that the full amount expressed in the September 15, 1971, agreement had to be repaid; that Pederson was a "trusted" customer and as such was allowed the return of his collateral although the $10,588.52 was still owing; and that the Bank understood that although this last amount was to be rescheduled to become the last payment, it was to be paid. From the record, we do not believe the district court was constrained to find that the Bank accepted the November 21, 1973, payment as the final payment on the Kilburn note.

The lower court's judgment is affirmed.

MOWBRAY, THOMPSON, and GUNDERSON, JJ., and HOYT, D. J., concur.